Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good afternoon and welcome to the Ninth Circuit Court of Appeals. This is the time set for the rehearing en banc in the case of Rafael Diaz-Rodriguez v. Merrick P. Garland. Our colleagues are appearing via video. Hold on. I just want to make sure everybody and everyone can hear Judge McEwen. You're muted, but I think you can hear us. Yes, I can. Okay. And Judge Gould? As I can hear you. Thank you. Okay. Judge Callahan? Here. Okay. And Judge Collins? Yes, just fine. Okay. If counsel is ready to proceed, you may come forward. Here's Judge Callahan. I think she's on. No, she's not on the phone. You can't see her, so I don't know if she's on. Her name disappeared from my screen. Okay. Hold on. Just one moment. Sorry about that. No problem. I think we've got her now. Judge Callahan, can you hear us? I can hear you, and I can hear me. Yes, and we can see you now, too. Okay. I'll mute. All right. Thank you. Yes, for those on the video, if you're not speaking, if you could mute, I think that would be helpful. We're ready to proceed, counsel. Great. Thank you very much, and good afternoon, Your Honor. As it may have pleased the Court, David Zimmer on behalf of Petitioner Rafael Diaz Rodriguez, I'd like to reserve five minutes for rebuttal. The statutory provision at issue in this case identifies three specific child-related offenses as grounds for removal, child abuse, child neglect, and child abandonment. That provision does not make a non-citizen unmovable as convicted of a crime of child endangerment. When this provision was enacted in 1996, child endangerment was not understood as a subset of abuse, neglect, or abandonment. In fact, it was understood as a separate, distinct type of offense. You can see this looking at contemporary dictionaries, which defines child endangerment as a separate term different from abuse, neglect, and abandonment. And you can see it in the general consensus amongst the state criminal law that to the extent that child endangerment was considered a crime at all, it was a different type of offense, distinct from abuse, neglect, and abandonment. Unable to seriously dispute this, the government asks the Court to treat the statute as a broad allegation to the Board to make really any child-related offense grounds for removal, so long as that decision was reasonable as a matter of policy. Okay. So may I pick up the question? I was on a similar case before, and there was a majority of the circuit to help that this phrase was ambiguous. Are you saying that we should decide that the phrase is not ambiguous and ambiguous at this point? Yes, that is our argument. And I think it's important to recognize that the question isn't whether the statute has any ambiguity. The question is whether it's ambiguous to this specific question. In other words, whether endangerment is a form of abuse, neglect, or abandonment, or whether it was its own type of offense, and not that many courts. In fact, I think the Second Circuit is really the only court, in our view, that has really helped that it is ambiguous in that sense. And that decision came down before a number of Supreme Court cases that clarified how courts are supposed to approach this question at Chevron Step 1. So I think a lot of the arguments that you made in the previous case, you know, we certainly agree with, and we think they're actually under Supreme Court cases like TISA or really appropriate under Step 1. We certainly also believe that if the court reaches the second problem of Chevron, for many of the same reasons, it is unreasonable. But we are at it, we do think. I'm not intending to convey that I justify our position because there's been a number of recent Supreme Court authorities that have come down that have some impact there. But does the statute become more ambiguous if you look at the phrase as a unitary concept as the government wants it to do? No, I don't think so. And let me explain why I say that because this is obviously very important. I think that this unitary concept argument is really a red herring in the sense that, regardless of whether the board could come up with one set of elements that captured all three of these terms or needs to approach one to approach them individually, what it can't do is sweep in conduct that would not abuse, neglect, or abandonment at the time that Congress enacted the statute. And the government points to really no case interpreting any statute that would allow this type of maneuver. So we think that the best way to think of it is really as three distinct terms because they really were, if you look at the contemporary definitions, if you look at state law, they were certainly overlapping but understood as distinct. But if the board wanted to try to come up with one set of elements that captured the whole phrase, that's fine as long as it doesn't sweep in conduct that wouldn't have fallen within that. Is that really what we're supposed to do here? I mean, under Chevron the question is whether, and I'm going to read this, the statutory provision shows the unambiguously expressed intent of Congress. We've got four courts of appeal that say this is ambiguous. Doesn't that in and of itself suggest that there is ambiguity for purposes of the first step under Chevron? No, not at all, Your Honor. And first of all, I disagree. There are four courts of appeals that have found this ambiguous in the relevant sense, in the sense of ambiguous to whether this type of endangerment offense is abuse, neglect, or abandonment. I really think that the Second Circuit's decision in Flores, I think maybe Zarate Alvarez are the only cases that come close to addressing this. And none of those decisions apply to the analysis that the Supreme Court has made clear as necessary. I mean, if you look at Escobar-Quintana, which I think is the most analogous Supreme Court case, the detailed analysis that the court took at Chevron's first step in rejecting the board's decision. It must not be any other court of appeal's decision except for the panel's decision in this case comes close to resembling the type of inquiry the Supreme Court has required. And forgive me, but based on your analysis, other than what in this particular case the four circuits have done, what specifically did the Third, Eleventh, and Second Circuit not do? Sure. The Supreme Court has said it's required under Chevron's Step 1, according to you. Yeah, they didn't look at dictionary definitions of the key terms and compare them at what time period before. At the time that Congress enacted the statute, the contemporaneous dictionary definition. I mean, I think a lot of those decisions didn't look at dictionary definitions at all. Is that a requirement? I mean, absolutely. I mean, whether it's dictionaries in particular, but it's definitely a requirement. If you read Esquivel-Quintana, you read Tizer, it is absolutely a requirement that the courts try to understand the Chevron's first step, make a real effort to understand what the statute meant. I mean, there were two different, as I recall, there were two different time differences on the dictionary. I'm sorry to interrupt. Can you just tell him on the screen? I'm here. Okay. Are you hearing? Everything. Yeah, I'm hearing everything. I'm here. Well, we'll keep tracking. Well, maybe you could just keep looking at that and let me know. Okay. Thank you. I'm so sorry. I just wanted to make sure. So the question I had was, if I recall correctly, two different dictionaries coming from different time periods used by different circuits. Which one is wrong? Well, I'm not sure that that's correct. I mean, I think that what you're looking for is the dictionaries that would have conformed you to what Congress would have intended the terms to mean. So I think the most relevant ones are the originalism. Well, yeah, I mean, that's exactly what the Supreme Court has held over and over again. If you look at the Wisconsin central case, that's a recent decision from Justice Gorsuch, that you look at the contemporary, the ordinary meaning of the statute that the time Congress enacted it. And, in fact, you know, the penalty did come up with a dictionary definition for child neglect. Do you quibble with that definition? And then why doesn't child endangerment fit into that definition? You're just talking about the blast? Yeah, the blast. Miriam Webster's. It was a common meaning for child neglect. And I just don't see why endangerment doesn't go into that. You know, we don't disagree with the use of those definitions. But I think what those definitions convey is different than endangerment in a couple ways. First of all, it requires a violation of the legal duty. There has to be a legal duty that is neglected. And I think that legal duty doesn't, it only flows to people who have an obligation to care for the child, and that's why these neglect statutes, if you look at Miriam Webster's example, it gives them the context of children failing to provide clothing and food, and all of that. It seems like that was fit into the endangerment statute here. So I think that's certainly the closest. But let me explain why I don't think that that's enough, which is that in the context of that, we were talking about violation of a legal duty that is owed to the child. I think that we were talking about with supervision, which I want for describing the final decision, is a sustained failure to provide something. And I don't know where that came from, though. It doesn't seem to. Can I just point out, I mean, don't you have, your children have a right not to be killed by a truck driver. Your client twice took a child in his car when, at the last time, he was a 0.20. I mean, it's great bodily injury we're not talking about. I know some of you and me keep talking about being able to separate families. But someone that drives a truck with their child in a car, does it really fall into that? Society wants to protect children from exactly that kind of abuse. Well, sure. And I'm not trying to, I guess, over-respond to this person. Obviously, you know, under the categorical approach we're talking about, the specific facts here are determinative. And if you look at the California Public Defenders Association, amicus brief, it gives numerous examples of the type of conduct that is brought, charges that are brought under the statute that do not involve this conduct. You know, but also – And it has to be the next demeanor. You know, I'm not sure that that one necessarily, but what is it, great bodily harm or death or great bodily harm? I mean, anyone that's done traffic court knows that, you know, when you drive under the influence, I mean, if people have a conviction for DUI, the next time they get convicted of it, if they kill someone, they can be charged with murder. So, I mean, it's pretty well known that it's dangerous, great bodily harm or death is likely. Sure, but I would emphasize, if you look at the actual California case law, like people be handsome, which we discussed in the brief, the California courts have interpreted – I don't want to get past your question, but they have interpreted the word likely to encompass any harm that's reasonably foreseeable. I mean, that's straight out of people be handsome. And so I don't think that – I think the statute is actually far broader than it might read on first appearance. And, again, I think that's where the California Public Defenders Association amicus brief is really important in that it explains the types of situations like leaving a child in a car while running into a store for an errand or not using a car seat correctly or falling asleep while children are in a person's care. Why doesn't the concept of child neglect include a pattern? Why wouldn't a single egregious instance of failure to exercise a duty of care or custody over a child be sufficient to qualify as child neglect? Yeah, I mean, I think that – so, I mean, I think in general the type of comment that's generally captured by neglect, you know, that failing to provide food or clothing or medical care, you wouldn't encompass sort of one morning where you didn't give a child breakfast or one morning where you didn't provide – you know, you sort of forgot to send in a sweater on a chilly day. And in the same way, I think that one instance – child neglect cases are often about surgery, like the lack of providing emergency surgery to a child for religious reasons. That's often how the child neglect cases are prosecuted. So that's a one-time event. That's true, Your Honor. I think medical care may be, you know, where you have something where it is an incredibly acute event that might rise. So I'm not disputing that there might be an instance like that. In the same way, there might be a particularly acute instance of putting a child in danger that maybe would fall under neglect. But what we're talking about here is something far more – every day we're talking about not putting a child correctly in a car scene. It is the combination of the event plus the associated mens rea. So if you're not doing needed medical care, there's an intentionality behind that. But you're speaking about a negligent act as a one-time event, and where the mat falls into the federal statute, correct? That's exactly right. And I think that's where the mens rea does play into that. And we're really talking about what are often just mistakes, right? This isn't something where, you know, the parent is – there's a sustained failure. It's something that's intentionally done by the parent. And I also think that, you know, for that reason, sort of the class of potential perpetrators is different for neglect and endangerment. If you look at the definition for neglect, it talks about a parent or guardian. The statute is far broader than that, right? This covers anyone. If you look at the people of the Perez, which we said in our briefs, anyone who's in charge of a child for even brief periods of time, people with even less connection to children than babysitters. So the argument that negligence is not consistent with the ordinary meaning of child neglect. The mens rea of negligence is not consistent with that. I think that that's right. I mean, I think that in order to violate the sort of legal duty of caring to a child, that you would require something more than negligence. Certainly the origin of both those words, negligence and neglect, is the same. Yeah, although if you look at the black definition of neglect, it actually makes very clear that neglect is talking about something different than negligence. It says that in the definition of – I think it's maybe the definition of neglect itself. It talks about how neglect includes the violation of a legal duty that separates it from negligence. Although I agree with you that there is some similarity, but I certainly think when you're talking about anything that happens on one occasion that would rise to the level of neglect. I think it would have to be more than a mistake, sort of a one-off mistake. The case doesn't just cover mistakes. I mean, if you look at the pattern and structure of the criminal negligence, it requires the gross departure from the way an ordinarily careful person would act in the same circumstances, and that it amounts to disregard for human life or indifference to the consequences. And a reasonable person would have known that acting that way would naturally and probably result in harm to others. And then on top of that, there's a requirement that they act under circumstances likely to produce great bodily harm or death. Now when those are all together, why is that not neglect of a child? When you have a duty because it's limited to care or custody? Well, first of all, I think that the duty, if you look at people who've had it, I don't think we're talking just about people who have sort of what you would generally think of as a legal duty. This statute applies to people who have care or custody of a child. Anyone who has care or custody of a child has necessarily a duty with respect to that child. That's the premise of the statute. Well, I don't think that that's how the – if you look at the definitions of neglect, it's talking about a legal duty and the concept more of something akin to parents under guardianship, whereas Perez says that the statute applies to people who have even less connection to children than babysitters. But I also do think that although, you know, it's just to get back to it, but I think the bigger picture point that your question is getting at, is that even though I think everything you read to get to the statute requires a particularly serious mistake. There's no question about that. But it is still ultimately criminal negligence, not intentionality, not even recklessness. Recklessness is obviously an even higher standard. But you do have people who are charged under the statute and convicted based on, you know, effectively judgments about whether their conduct was mistaken or not. And, again, I urge the court to look at the Public Defender's Association amicus brief. But the statute is charged and interpreted by the California courts incredibly broadly, far more broadly than it might appear, when you just look at the language itself. And I don't think that this type of one-off incidence rises to the level of neglect. And I'd also, you know, point out, Your Honor, that the Board's decision in this case was not anything specific to the California statute. The Board was just applying a sort of sweeping rule that, in danger of incidences writ large, are removable offenses. And if you look at the first section of the American Immigration Lawyers Association amicus brief, it gives examples. I mean, if you look at Ibarra, right, this is a single mother with seven U.S. citizen children in her, and she was four. The children were left unharmed and unattended while the mother went to work. And she didn't even intend to leave the children unattended. It was effectively an accident. No one was hurt. And the Board says, you know, fine, that's a removable offense. And, you know, that type of conduct, and you have similar conduct charts under the New York statute issue, similar conduct charts under the Oregon statute. And so, yes, this is a particularly narrow endangerment provision, but it's still an endangerment provision. It still criminalizes negligent acts, one-off acts that create a risk of harm. And the Board's reasoning here was not specific to this statute. Okay. Oh, I'm sorry. I'm very excited about it. But did I just hear you say that you don't think the conduct here arises as serious conduct? Did you say that? No, I wasn't talking about the conduct here at all, actually. I'm in no way trying to suggest that the conduct here is not serious conduct. I do think this was, you know, a mistake that my client made. It was a very serious mistake. I'm not disputing that. A mistake, too, right? Sorry. Let me ask you this. What's the minimum mens rea required for a conviction under California Penal Code 273AA? And how does that differ from the BIA's determination of the mens rea required by 8 U.S.C. Sections 1227A2EI? Well, I mean, the mens rea is criminal negligence, and the BIA held in the indictment statute that has a mens rea of criminal negligence is sufficient, and that's exactly the conclusion that we're challenging here. I do want to emphasize, just since we keep coming back to my client's conduct here, which, again, I'm not trying to excuse in any way, but I do want to emphasize that, you know, my client went through a period where he was suffering from alcohol abuse and made these serious mistakes. But, you know, as an example, I mean, he is not my client. As he testified at 123 to 124, went into counseling, went into treatment, has not had a clinic in more than a decade, has not had any interaction with law enforcement, saved one speeding ticket in more than a decade. His children are enlisted in the U.S. military. And so, you know, I think that this was a, I'm not in any way excusing the conduct here, in any way at all, but I think that you would. How should we interpret the United Services decision in Fringo versus Holter when considering our position at Step 1? Is Section 12.7A to E1 ambiguous? So I don't think Fringo would really address that issue because Frigoza ultimately concludes that the government lost, you know, that some actual harm was required under the board's decision in Velazquez Herrera. So I don't think that Frigoza really speaks to the ambiguity of the provision one way or another. And, you know, even if it did, you know, Frigoza was from well before all of the Supreme Court precedents that we said in our brief. It certainly didn't do any kind of analysis. It was also a different endangerment statute, wasn't it? It was also a different endangerment statute, that's right. Right. And so, but it didn't encompass negligence as met REA. And, of course, it was prior to SORM, as you point out. So the question I have is, does Frigoza have any, given that we're in a faint court, does it have any continued fatality or teaching, or do we just ignore that? Yeah, I think that Frigoza's only real relevance is for our retroactivity argument, which I don't want to get into right now. But I think you're right, given that for purposes of this court's analysis, I don't think Frigoza really has much bearing. Oh, go ahead. I'm sorry. Is it okay to just follow up on this? Because I'm just trying to figure out, if it's because the statute may be ambiguous in some circumstances, does that mean that it is ambiguous as to whether Congress intended to include negligent endangerment offenses? No. I think that you can have a statute that's ambiguous in some ways but can still unambiguously resolve a specific question. We gave an example in our brief of a statute that covered the regulated vehicles that may be ambiguous as to whether that covers bicycles but unambiguously excludes rollerskates. And so we think you could say something like that here. We're arguing that the phrase, that there is nothing uncertain about this phrase. The point is, what is certain about it is that it specifies abuse, neglect, and abandonment. And if you look at the dictionary definitions from 1996, So following up, so you have your dictionary definitions. What else in the textual analysis, what about the structure and purpose of the statute in this history? What else could you elucidate as far as in support of your argument that this should be resolved in step one? Sure. I mean, there's obviously the state criminal laws, which we think really reinforce the dictionary definitions. And then the structural and sort of historical arguments are, I think, sort of tertiary, but I think they are important in the sense that, well, when this was introduced, Senator Dole described the crimes that were being targeted as particularly vicious acts directed at children. And so to the extent the court, you know, used that as relevant, I think that that really highlights that they make sense, that Congress is targeting particularly serious conduct. These are the most serious child-related offenses. And then I think that you have the fact that each inclusion in a crime law, the conviction for a crime of child abuse, neglect, and abandonment, has extremely serious immigration consequences that, you know, that can make a single act. And I think Judge Wofford did a good job of setting this out in his panel decision where it doesn't really make sense that a single mistake involving children could ultimately harm the very children that Congress was trying to protect by separating the parents and making them, in many cases, Are you aware of any other federal statutes that define child neglect, such as CAPTA? No. I mean, there are civil statutes, but, yes, I am aware of them. I think there is a CAPTA 1988 version to define child abuse and neglect to include negligent treatment. Right, but then negligent treatment would be defined as a term that I think is really similar to what I'm describing as neglect. Right, so, yes, I mean, neglect treatment includes a mentory of negligence. Well, yes, although I think that that definition, I mean, I have to check, but I'm pretty sure that that definition, let me confirm, but I think that the definition is not, I don't think that definition would encompass, I'd have to go back and look at it, but a one-off act, and I also think it's important that that's a civil statute. That's a civil statute, and I think it really is important in the terms we're going to emphasize this at some length, but there's a real risk here in broadening and including the statute too broadly by looking to civil law. You know, civil law in this area is serving a completely different purpose than criminal law because the whole point of the civil law is to intervene to help families and to help children, whereas criminal law is trying to figure out who to put in jail. And it's at the real quick time that states also rely on federal and civil statutes, but the Supreme Court ignored them. Yeah, that's exactly right. That's exactly correct. I'm not aware of any Supreme Court case that had ever interpreted a generic federal crime based on civil interpretations of analogous terms. So it's not even persuasive at all? I don't think so, actually. I don't think it's persuasive. I mean, just because it's trying to do something completely different, it's not talking about criminal conduct. Even though it defines the term criminal abuse and neglect, because the definition in CAPTA at the time included an act or failure to act which presents imminent risk of serious harm, which seems to capture the statute. Well, so first of all, I disagree that it captures the statute in the sense that unlike some other statutes, there's actually no imminence requirement here. And also, I mean, I don't hear it. So it's likely to cause bodily injury or death? Well, likely, again, I don't want to sound like a broken record, but the California courts, this is a California statute, and the California courts have interpreted the word likely to mean not more probable than not, but just to mean reasonably foreseeable. And I don't think that reasonably foreseeable harm is the same as imminent harm. But, again, I think that there is that phrase, crime of abuse and neglect, but it's not defining criminal conduct. It's talking about what conduct should get included in a background check. And I think in that context, you know, as in other criminal contexts, it makes sense to, you know, the purpose of the law is not identifying people who should be put in jail. It is serving a civil purpose that's trying to help people to provide more information to the public. And in that context, I really don't think that those definitions are relevant. You have suggested several times that because this is a one-off situation, that it's different. Why is that relevant here, whether it's a one-off or some continuing pattern? Well, I think it's relevant because, you know, perhaps in some maybe particularly egregious situation, the child neglect in particular really is not normally charged. Again, there might be situations of especially egregious intentional conduct that might rise through neglect. But for the most part, you're looking at failure to provide food and clothing and sanitary living conditions that you're looking at much more of a pattern of conduct. And I think that's where it sort of comes into it. You're going to your rebuttal time. Judge Cohen, you had questions. Did you want to answer them? Oh, thank you. I just wanted to ask, for both Progoso and the four circuit decisions that Judge Smith was referring to, both courts found the statute ambiguous largely because there was no statutory definition and because other circuit courts have similarly found. Is there any basis based on the recent Supreme Court precedent to say that that would be sufficient, that there's no statutory definition? No. In fact, Esquivel-Quintana makes clear that that's not sufficient to find the provision ambiguous. Esquivel-Quintana, the provision in Esquivel-Quintana was also undefined. It was added to the statute as part of IRI, just like this one, and yet the Supreme Court held that the lack of definition just means you have to apply ordinary interpretive tools, and that's exactly what we're asking the court to do here. If you want to reserve the rest of your sessions. Thank you. Good afternoon, Your Honors. May it please the Court. I'm Erica Miles for the Attorney General. I'd like to quickly raise a couple of rebuttal points and then dig in, but I want to make sure that I get out the ambiguity. Step one of Chevron necessarily means that if there are more than one reasonable way to read the statute, it is ambiguous, and the court must proceed to step two in determining ambiguity. Your counsel suggests, if I understood him correctly, that you could have an ambiguous statute as long as the portion, in this case, Child Abuse and Endangerment that we're talking about is not ambiguous for purposes of Chevron step one. What's your response to that? My response is we're looking at the terms themselves. So the absence of the word endangerment in the statute is certainly a consideration, but it doesn't end there. And in 1996, the universe of these crimes against children, either individually as abuse, neglect, abandonment, or even collectively viewed as ways of maltreating children, however you view them, none of them have specific elements or concrete concepts as to what type of conduct, the breadth of conduct, and the terminology that everyone was using that would somehow categorize this into the universe of maltreatment of children. And if you look at the states, which is what the board did here, the states very quickly point you to a lack of clarity. They use very different terminology. I'd like to give you an example. This California statute has a fellow state in Idaho using the same language. California classifies this as abuse and endangerment. It's called Willful Injury and Endangerment. It's under the chapter called Abandonment and Neglect in California statutes. So it's categorized as a crime of abandonment and neglect. In Idaho, they have the same misdemeanor and solemnity provisions. They're mirror images of each other. They call this injuring to a child. Do you agree that under current law, Chevron ambiguity is kind of a last-step doctrine that we only conclude that it's ambiguous as Step 1 of Chevron if we've exhausted all other tools of statutory construction? I would say the court should be looking to the tools, traditional tools of statutory construction. I agree that the courts are needing to do this. However, in doing that, in reaching ambiguity, no one method is required. No one method is dominant. And it must come to a consensus in the Supreme Court that this must inexorably lead to ambiguity or lack thereof. And when you go through the tools of construction here, beginning with the statutory text, as you always do for statutory construction, we have three terms chosen by Congress, abuse, neglect, abandonment, as the prime tolerable terms. The panel's judge will offer a definition of child neglect. I'm sorry, could you repeat your question? Sure. The panel declined to have a common meaning for child neglect. Do you disagree with that common meaning? I don't disagree with the common meaning. I would say – Okay, that's the case. Well, no, I disagree with the common meaning. And I would add to that to say – pardon me, I agree with the common meaning. I would add to that to say that I think if you're drawing from definitions, from dictionary definitions, a lot of times they're really referring to more of the civil concepts, the well-established concepts. And they themselves are using terminology that is still subject to interpretation. Are you saying we don't go to the dictionary, even though it seems like that's what the Supreme Court is telling us to do? Dictionaries are helpful. But to my point, the statutory terms abuse, neglect, and abandonment, unlike when the Supreme Court is looking at these generic crimes, like burglary, arson, extortion, which have a common ordinary understanding by and large in federal court, which is a model penal code as crime in the state that's having common elements, that is much more useful for looking to dictionaries because these are well-established, common law, long-history crimes. These crimes about children here do not have a long history. I'm sorry to interrupt, but under Esquivel-Quintana, doesn't this analysis ultimately reflect the level of specificity we have to get to? Because in Esquivel-Quintana, the issue was sexual abuse of a minor. And at a certain level of abstraction, that encompasses myriad different behaviors and state criminal codes and other things. But when the Supreme Court narrowed in on age of consent, it no longer became ambiguous. And so to Judge Smith's earlier question, we may agree that there's a level of ambiguity at a broad level, but if you're narrowing in on those specific terms and whether endangerment is encompassed within them, why is that ambiguous at that point? Because endangerment is subject to interpretation itself, and all of these terms are subject to interpretation. Let me start with Esquivel-Quintana, your question there. Because as you recognize, the Supreme Court wasn't interpreting the statutory term, sexual abuse of a minor. All of the parties agreed that statutory rape offenses can qualify. So you've got a subset of sexual abuse of a minor that's in front of the Supreme Court. And there the rub was, what is the age of consent? Which will qualify and which won't? So the interpretation and the statutory tools that were employed were about age of consent for the meaning of minor within this subset. Here the parties are disagreeing whether or not the endangerment would qualify, and here's specifically negligent endangerment. I'm sorry to interrupt, but the parties were disagreeing. That's Esquivel-Quintana as well. The government was proposing a different definition that was about legal age to enter into contracts. And so there's going to be disagreement, even reasonable disagreement, but that doesn't necessarily make the statutory phrases ambiguous. I'm trying to find why is this a different case than Esquivel-Quintana, which undertook that sort of sexual analysis and came up with an answer. Because the narrow question, this one element of what everyone agrees is statutory rape, this element of statutory rape, age of consent, the tools of statutory construction clearly led to an answer. And when you go through all of them, they all led to the same answer, and it didn't leave much ambiguity at each and every step along the way, dictionaries, textual interpretations and situations in the INA. Can I ask you, when I read your brief, it seems like your step one argument under Chevron sort of boils down to there's no statutory definition and look at what second, fifth, eleventh, other subjects have done. Do you disagree with the criminal survey evidence that was, as an example, the survey evidence that most states did not define? Because in Esquivel, if I can just follow up on this, because I think you told us that the Supreme Court, you know, we look at what the Supreme Court did there, and, again, that would be informative, and they consulted contemporary state criminal codes. So here, if you do that, the examination of the contemporary state criminal codes demonstrates that a crime, a child abuse, neglect, and child abandonment excluded negligent endangerment. And in 1996, which I think we're supposed to look at the time that this was enacted, only 14 states classified negligent child endangerment as a crime, and only seven of those 14 states identified negligent child endangerment as either a crime of child abuse, neglect, or abandonment. The taking the survey at face value for the breakdown in the numbers, as you just described, because I did find some that were misclassified, and I think it goes to show how difficult state surveys are. Every time there's a survey, let's just see if it's correct. Let's just see if it's correct. The inverse that sometimes states like New Jersey, for example, and Alaska, for example, entitle it endangerment, but they're also rolling into that abuse. There aren't necessarily statutes entitled child abuse in some of these states. Sometimes they're called endangerment. D.C. called it cruelty. And in D.C., it's both abandonment and endangerment types of offenses. And what I talk about in those reports is child abuse. Isn't that the very reason why, when we're applying the categorical approach, we look at what crimes are actually punished under that state statute? Because the states, as we hear commonly, use certain language, but routinely punish a wider range of conduct under that very statute. Yes, and I think the Supreme Court's decision in Shuler is a good example, where the Court was looking at serious drug offense, which is a federal offense. And that was defined by the conduct of manufacturing distribution. And the question there was, did the states need to specifically use the word manufacturing or use the word distribution, or were these terms more descriptors that were supposed to come within? What if the conduct was the same? And here we have the states that were all over the place with their terminology but many of them did decriminalize the same conduct with different names. And like I said, there are the mirrored statutes within California, Idaho, and there's also Arizona. They use different titles, injury to a child. California puts it under the umbrella of abandonment and neglect, and Arizona calls it abuse. So we have one not even using the term, two using different statutory terms. But then when you look at the statute itself, all of the conduct criminalized is exactly the same, and it includes both what we call abusive conduct, actual harm, and endangerment conduct posing a likely risk of harm. And then, like I said, D.C., they call it cruelty, but that's covering both abuse and likelihood of harm. And then why does it matter if you agree that there's a common meaning for the term child neglect? All we have to do is take the statute that issues the California Penal Code here and see if the elements match with the common meaning. I agree that endangerment can certainly qualify as child neglect within the meaning. You don't need a pattern of conduct. It can certainly be a one-off. It's a step two. You can win on step one if you try one. You could. And I certainly encourage you to do so if you agree that child neglect as a concept, as a crime, encompasses that, because endangerment, you know, application of a supervisory role for looking out for children is certainly neglecting their well-being and putting it at risk. Can you, like, in what source of definition or what source would you draw from that to see that endangerment falls within neglect? I would go to the dictionary that we've been talking about, the dictionary terms. The civil definitions, which – I'm just trying to – which dictionary term are you referring to? The Black Claw Dictionary for Neglected Child, the 1990 version for neglected child, and in addition both the Merriam-Webster and Black Claw Dictionary for 1999, and then the ones moving forward as they got more inclusive of the context we're talking about. This has been an evolving concept, as we all recognize, but the – and to be fair, in 1996, when we're talking about Black Claw, that was really the 1990 version, and as I believe Judge Bybee pointed out in majority opinion in the Martinez-Sedillo case, he pointed out astutely that when Brian Garner came in and he overhauled the definition, so that was the – from 1990 to 1999, the overhaul was drastic. So the 1999 version, as the board said, and the 2004 version seemed to be more aligned with all of the other authority it was considering, like the federal civil statutes and the state statutes. Are you now arguing that there's no ambiguity as to the statutory term? I do not agree if you argue it was ambiguous. So is your position now different? I'm not – I'm – the statutory phrase – The phrase itself is ambiguous or unambiguous? It is ambiguous. As to the question about is it ambiguous as to whether or not child endangerment or negligent endangerment falls in, if this court collectively agrees that child neglect encompasses endangerment, I would say that it's not ambiguous as to this precise question. But overall, the phrase is ambiguous. There's a wide swath of offenses out there. I have a question about the case of El Tribal Quintana that the court seems to rely heavily on 18 U.S.C. 2243 and federal statutes, which have the age of consent at 16. Is there any equivalent federal statute in this context defining any of the terms? No. One or the other? There are not. And that is my point. You can go back to the why do civil statutes matter. To your point, Judge, there are no federal statutes. This is very different than the situation of well-understood crimes like burglary, even sexual abuse of a minor. Most of the time, there are also federal crimes to at least draw from. There are none here when you look at the term as a whole, when you look at the individual offenses. If you're looking at child abuse, that was more understood as a crime. Neglect and abandonment were still kind of more in crossover with civil statutes versus crimes. So the federal civil statutes were absolutely guiding, because that's all Congress had in 1996 to look at. We don't even have model penal code definitions like most of these crimes that we're talking about when we're trying to get to a generic definition in ambiguity. And we looked at CAPTA, which has a definition of child abuse and neglect. Yes. Even if it's civil. Even if it's civil, because what's your best authority for that? The best authority is that it's a toolbox of tools that you need to use for ambiguity. And depending on what you're – I'm still saying that it's ambiguous and then going to the second. Or are you saying I'm confused? I apologize for any confusion here. I think we're talking about a couple different questions here about ambiguity, whether we have clarity, period, for the statutory term and the phrase, I will call it, and the terms within. And then the question here that's more narrowly presented about whether or not endangerment is encompassed. And it does, you know, as the board said, and as we've been discussing, the offense of child neglect would seem to clearly encompass, if you're talking about dictionary definitions, if you're talking about the federal civil statute, if they do encompass without ambiguity this offense. In the states, there is some ambiguity because some criminalize, most criminalize endangerment, for sure. We have at least 38 states that criminalize it. That's what I'm asking. The more that we talk about it, the more ambiguous it gets. But that being said, in reviewing the BIA's interpretation of the statute, what weight, if any, should we give to the argument that the BIA's interpretation covers, quote, a single lapse in parental judgment, unquote, which might render a non-citizen parent removable. That's a creative oracle that counsel or the appellant is presenting to us. Certainly. A lapse of parental judgment is not, you know, a typical one, is not one that the board would consider as meeting its definition. If we're talking about a month that falls within, like, this statute, a high likelihood, it has to be likely or probable harmless result. That's where the board draws its line. And the California statute here is a good example where you have the misdemeanor offense where harm may be likely. And then you have the felony provision where it is likely or probable, and I keep issuing counsel saying that it's not likely or probable, it is. Can I ask you this? I'm frankly confused. You had said to my colleague here that basically you could win on Chevron step one, which means the statute is not ambiguous. Yet you're maintaining, on the other hand, that the statute is ambiguous. And if it is ambiguous, what is your very best argument? You've tried all kinds of things. But if you're going to encapsulate your very best argument for why the statute is ambiguous, what is that argument? The argument is that when you look at the traditional rules of interpretation together, none of them provide clarity, and none of them converge on a clear answer of what the phrase means or what the terms alone mean themselves. There's no clear answer as to the types of conduct. There's no clear answer as to what Congress meant in 1996, or even within the types of conduct, the breadth of conduct, how far. No clear answer about mens rea required for any of the types of conduct. Those are sliding scales. So having said that, do you now, if you will repent your conviction, that this is unambiguous as to step one? Which is it? We've always taken the position that it's unambiguous. That it is unambiguous. That it is ambiguous. What is your best argument that it's unambiguous? What's your best argument? I don't have a best argument that it's unambiguous. My best argument was referring to federal civil statutes. We have federal civil statutes that provide us with negligent treatment. But negligent treatment, I would say, treatment itself does not fully give us a clear understanding of the full conduct that's encompassed. And that was my point. So if you view the definitions, the dictionary definitions for neglect, if you view the civil statutes encompassing negligent treatment as clear and unambiguous, then endangerment would most certainly qualify. But my point is those terms themselves used to define negligence, used to define abuse in dictionaries in the civil statutes, and even by the states themselves, which cross-reference their own civil statutes a lot of times, they are not bastioned with clarity as to the meaning until you dig down and then get into Ted's law interpreting what each and every state means as to terms like injury. Go ahead. How should we interpret Congress' decision to exclude endangerment crimes from the INA? I would say that it should be interpreted as not an exclusion, an affirmative act, instead that use of the terms abuse, neglect, and abandonment have so much crossover, and the states bear that out, that by using those three terms, it should cover a wide swath of cases. And to be sure, we're not talking about the sexual nature offenses like molestation, like solicitation, enticement. Isn't it important that Congress enumerated three specific crimes that left out negligent endangerment? Well, these are not specific crimes, is my ultimate point here. Child abuse is not a well-understood or known crime. Child neglect, child abandonment, these three things are understood very differently. These words are used interchangeably. If you look at these state statutes, they use these more as concepts and as guideposts, like saying child abuse, for example, in the Arizona statute, which is very similar to the California statute. They call it child abuse, but it necessarily encompasses risk of harm, endangerment, offenses. California here calls it injury or endangerment, under the umbrella of offenses that are classified as abandonment and neglect. Can I follow up with that? Sure. I sort of see child abuse and abandonment as fairly different concepts. It's abandonment, you're left behind, you're leaving your parental duties behind. Child abuse takes on a different connotation of maltreatment of a child. And if you agree with me, I'm curious what you think. Doesn't that suggest that these are independent phrases? And to Judge Morgia's point, that endangerment, the absence of the omission of that, should carry some significance. Well, it should carry significance because you're looking at the terms in the statute, but looking at what the states have done, as I said, there is overlap. And I understand that abandonment, conceptually, as you view it, is different. It's not always different than endangerment. And endangerment can be abandonment. Endangerment can be neglect. And endangerment can be abuse. And in one state that I found, I believe it was Alaska, it's leaving your child behind under circumstances that cause a risk of harm. So it's not leaving your child forever. It's leaving your child in a situation where the risk of harm is high. So we have a different state viewing abandonment, but that's the term that they use for this endangerment. It can also be different. You said you're telling us how it can be the same, but it can also be different. It can be. And the intent here in 1996, let's just quickly go through legislative intent. Congress added a whole bunch of aggravated felonies to the grounds of removal. Crimes against children never existed before 1996. They added this. They added the sexual abuse of a minor aggravated felony. And to talk about intent, about whether or not somebody should be able to be eligible for relief, we were talking about this now barred cancellation of removal. That happened in 1996 too. It used to be suspension of removal. It should be a lot harder. Why shouldn't we follow the 10th Circuit and borrow? Actually, I'm asking you to follow the 10th Circuit to the extent that they agree. I know that the traditional rules of statutory interpretation do not bring you to a clear answer. Four of them. So now you're going to it's ambiguous, so now you're back in ambiguous, and we're at Chevron Step 2 instead of Chevron Step 1, which you told my colleague that that's where we can end up. I fully retract that because you said it's ambiguous. No, it is. I apologize. I didn't mean to get you there. That was a big hint. Okay. So then we're at Chevron Step 2. Absolutely. That's where we want to be. That's where you want to be. That's where we want to be. We want to be at Step 2. All right. And so then if you could just answer my question, because you said, well, if you follow the 10th Circuit and borrow, my question is not that. Do you not follow the 10th Circuit and borrow? The 10th Circuit and borrow, in our view, was a very flawed decision that got them to the conclusion that we disagree with but can accept. They rolled back that they don't defer. They defer to the Board's definition in every other way now after Zarate Alvarez. By the way, we have five circuits that defer to the Board, not just four. I just wanted to clarify that. It's also if you look at the 10th, it does defer. We know that now. So because of it, you ought to know that they should have remanded it to the Board. They found it was ambiguous. That's where under Step 2 they should have remanded it. Yes, yes. I have a question. You have left me totally confused about your position. I'm sorry. I'm agreeing with the borrow. And now you're telling us you want to. The borrow was totally off-base. And the statute is ambiguous and it's not ambiguous. So are you objecting to the result in the borrow or the analysis or something else? I'll just start from the beginning. We agree with the borrow that it is ambiguous, that the phrase is ambiguous. We agree with that. We took issue with that juncture, which was for them not remanding back to the Board after determining it was ambiguous. And we take issue with their analysis, which they reached their conclusion only based on a state survey, and it was a flawed state survey. And so the way that they got to their answer, we take issue with that instead of remanding to the Board. And so we take issue with the results. But we agree with the borrow that it is ambiguous under all the other rules of statutory interpretation. So now you're lamping. Your last and final answer is that the statute is ambiguous. Is that right? The statutory phrase is ambiguous. Yes. We asked the Board. What about the eighth circuit in KB Garland, with your position on that? I'm sorry, which case is that you're referring to? In KB Garland, which is, I think, a 2021 case. That's the Iowa statute. I am not familiar with that decision. So let me just ask you, just get back to the final thing is if we're talking about California. I think I was misunderstanding. Are you referring to PEH, P-E-H? PEH? Oh, I'm sorry. I thought you were saying K. I apologize. K. K. Okay. So it is K. So what's your answer to that? The court didn't really reach it. They assumed ambiguity without deciding it, and they remanded the case back. So we agree with that. But it did provide a level of deference, and I didn't count it in my five giving deference, but they did assume it in that case, and they just found that the statute wasn't qualifying. They deferred to the BIA, didn't they? They do. Okay. So if they declined and deferred to the BIA, that would assume. No, they didn't decline and defer. They found that the board didn't apply its statute correctly, so they didn't do a deference analysis. They instead found when you look at the state statute under the board's definition that it didn't match. So it's more of an as-applied ruling as opposed to a deference determination. I have one last question. Okay. Let's say you win on step one, that the statute is ambiguous and the rule of lenity apply, and we still have to rule in favor of the petitioner. How do you account for the rule of lenity in that situation? Our position, and I believe the way I read this court's precedent, is that the rule of lenity does not apply for immigration proceedings cases. This is an INA term. And while I understand that there is some question for dual application statutes, although this court still does apply Chevron deferences, it's in balance with a Gallardo, or it's an obstruction of justice case. This court has held the rule of lenity applies to immigration cases. How did it apply when you have a dual application statute, meaning like an aggravated felony, for example? The only reason that we are applying Chevron deference in the first place is that this is a dual application statute. No, no. This is not my dual application. Pardon me if I'm not clear. What I'm trying to say is that we're being asked to interpret a phrase that statute that's within the INS and DHS to administer or promulgate regulations. However, what they put forth is a definition of a criminal offense. And so we are applying deference to the BIA's interpretation of a state crime. That's what you're being asked to do in this particular instance. So it's not actually dual in that traditional sense, but it is kind of asking for greater deference, and I would think that the BIA would be entitled to in this situation. The BIA would be entitled to Chevron deference, because as I'm referring to a dual application statute, like the aggravated felony terms, those are used actually in the criminal context. So the concern that this court identified is negligence, neglect, abandonment, and abuse certainly is also used in the criminal context. Not in for federal crimes context. So the concern is that the BIA is giving meaning to the term crime of abuse, neglect, or abandonment, and that the board's meaning then will be supplanted or used in a federal criminal context such as sentencing. Typically we're talking about criminal reentry cases. So if the board defines an aggravated felony for purposes of removability, that definition would also apply for the crime of illegal reentry. Here, this phrase, the crime of child abuse, neglect, abandonment only applies in the removability context, civil context. It does not have application in the criminal illegal reentry context. So the board's definition is cabined only to this definition applies for purposes of removability. For the crimes themselves, you know, while they have that. My comment is addressed to the board's expertise to be defining these crimes in the first place. And I just want you to comment on, you know, does the aspect of my defendant, Martina Cedillo, where I catalog all the times that the board changed its definition, and in fact it's changed its definition again since Martina Cedillo. And isn't that just evidence that the board really doesn't have expertise in this area to be defining the criminal acts? No. I respectfully disagree that the board's been changing its position. I think it provided its original position in the law since Herrera, but it wasn't complete. It left some questions unanswered. It explicitly said that it did. But it does have the expertise here because Congress put this term in this removal statute only. So what the board is doing here is just giving meaning to the states who have already decided to convict people of these offenses and trying to match up whether or not the state has convicted somebody of what Congress has said is a removable offense. And the board is being as even-handed as possible where we have this broad lexicon and very difficult understanding of that meaning. But its definition is applied the same to every single state, every time. It's, you know, the Black v. Herrera primary definition, and then when we're talking about endangerment, it must be a likelihood of harm. That's where, you know, the board, if it's only a possibility, the board draws a clear line. It applies to standards the same to every state. And so it's for the state to decide if their statute meets the board's definition, you know, through their own, the way that they define their offense. Thank you. Thank you. I apologize for voting over one of the questions. Thank you for responding. We repeat it. Thank you. Thank you. I really just want to make one point because I don't have a lot of time. The government has the court to look to the Merriam-Webster dictionary and the Black 99. I think those were the dictionaries that you mentioned. And if you look at those dictionaries, what you'll see is that those dictionaries identify four categories of child related offenses, abuse, neglect, abandonment, and endangerment. Those are all defined terms in those dictionaries right there. And I think that that is really what the state ultimately comes down to. Congress listed three of those and left one of them out. And no matter how much the government may try to disguise it, that's just the way it was, that these defenses certainly overlap in certain ways. I'm not going to dispute that. And that there is some variation across states as to how these offenses were treated. I'm not going to dispute that either. But taking a few states that use, you know, different terminology doesn't take away from the fact that both of the key legal dictionaries that the government is asking this court to look at defines four child related offenses, and three of those are listed in the statute. And one is not. Counsel, what about counsel's argument that the specific definition of neglect encompasses endangerment type offenses as well? Sorry. Again, as I've sort of discussed before, I think it might encompass some endangerment type offenses, like what Judge Bruma said was going to have before. But I don't think it sweeps in the entire universe of endangerment offenses. Otherwise, why would there be a separate definition of endangerment in the dictionaries? You know, there was clearly a recognized need to have this separate category of offenses that encompass more broadly one-off acts that created a risk of harm to a child. That's what endangerment does. But it's different than neglect. And, again, that's not to say that there's not overlap there. There's obviously overlap between neglect and abuse. There's overlap between all these phrases that are overlapping in some ways. But the whole reason that endangerment is a separate defined term that states create these endangerment offenses is because it's capturing some conducts, generally lesser conduct, that doesn't fall within one of the other categories of child related offenses. And, again, no matter how much the government would like to avoid it, at the end of the day, Congress identified it didn't make all child related offenses grounds for removal. It identified three of the four recognized categories of child related offenses. And I think that at the end of the day, what we're asking the court to do is recognize that that decision has implications for what convictions count. And so, Victoria, time's over. So are you saying it's decided in step one, Chevron step one, or Chevron step two? Absolutely step one. I mean, certainly as we explained in the brief, we certainly think that we win under step two for the reasons in the brief. But if you just follow the reasoning from Esquivel and Fontana and apply it to this case, we think we win. And, again, the government likes to count the number of circuits that have found ambiguity, but read those cases. There's no reasoning from them at step one at all. And so we just don't think that those are really consistent with the rules. Any other questions? I have a question. Your argument on rule of lenity seems a little bit circular in that we're only supposed to apply it if the statute is ambiguous. But you also seem to be proposing that we use it to determine whether the statute is ambiguous. So if you could explain that, and then say the majority of this panel agrees that there is ambiguity here, how would the rule of lenity apply? Right. So I think the Pacific Legal Foundation briefly lays this out pretty well in the sense that the rule of lenity, the definition of what a rule of lenity is, is an interpretive tool and standard tool. The statutory interpretation applies to everyone's first step. And this is what the Supreme Court did in St. Cyr. And so the way that I think it works is that in the context of Chevron, the way I would describe it is that, you know, if you have a real sort of 50-50 case, then I think you probably move on to step two. But if you apply all the other interpretive tools, then there's what the Supreme Court described in St. Cyr as lingering ambiguity. But, you know, if it's not 100% there, then that's where lenity can kick in at the first step and resolve that. If you only do it at step one, you never get to step two. Well, I guess what I'm getting at, and again, I think it sort of depends on how you read St. Cyr, because this is what the Supreme Court did in St. Cyr. But I think what the Supreme Court meant by lingering ambiguity is that there's some sort of marginal ambiguity of which lenity might apply at step one. You know, whereas if it's just completely ambiguous, you're really throwing your hands up in the air, that might be a situation where you would move on to step two. But I think St. Cyr makes clear that lenity does play some role and, in fact, an important role at step one, and that was one of the bases. And to be clear, St. Cyr was not a dual-application statute. St. Cyr simply applied the rule of immigration lenity at Chevron's first step very explicitly, and that's a Supreme Court case. So I think we've just asked the courts to do exactly what the Supreme Courts did there. Is there no other questions? Thank you very much. Thank you very much. Ms. Duesenberg and Ms. Miles, I appreciate your on-line presentations here today for the case of Raphael Medeiros-Tobregan versus Merrick G. Garland. It's submitted and we are adjourned. Thank you. All rise. This court for this session has adjourned.
judges: MURGUIA, McKEOWN, WARDLAW, GOULD, CALLAHAN, SMITH, IKUTA, COLLINS, BUMATAY, KOH, SANCHEZ